UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| LISA A. ROCK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:14-CV-00078 JAR |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying Lisa A. Rock's ("Rock") application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq.

**I.     Background**

On November 3, 2011, Rock filed an application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. (Tr. 136-142) The Social Security Administration initially denied Rock's claim on January 18, 2012. (Tr. 77-82) Rock filed a timely request for hearing by Administrative Law Judge ("ALJ") on February 10, 2012. (Tr. 85) Following a hearing on March 4, 2013 (Tr. 24-57), the ALJ issued a written decision on April 18, 2013, upholding the denial of benefits. (Tr. 10-23) Rock then requested a review of the ALJ's decision by the Appeals Council on May 29, 2013. (Tr. 8) The Appeals Council, on May 28, 2014, denied Rock's request for review. (Tr. 1-4) Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

1

Rock filed this appeal on July 24, 2014. (Doc. No. 1) The Commissioner filed an Answer. (Doc. 9) Rock filed a Brief in Support of Complaint. (Doc. 23) The Commissioner filed a Brief in Support of the Answer. (Doc. 26) Rock did not file a Reply Brief.

## II. Decision of the ALJ

The ALJ determined that Rock last met the insured status requirements of the Social Security Act on September 21, 2010[1] and had not engaged in substantial gainful activity from that date through her date last insured of September 30, 2010. (Tr. 15) The ALJ found Rock had a medically determinable impairment of degenerative disc disease but that no impairment or combination of impairments significantly limited her ability to perform basic work-related activities for twelve consecutive months. Therefore, she did not have a severe impairment or combination of impairments and was not disabled. (Tr. 15-16, 19)

## III. Administrative Record

The following is a summary of the relevant evidence before the ALJ.

### A. Hearing Testimony

The ALJ held a hearing in this matter on March 4, 2013. (Tr. 24-57) The ALJ heard testimony from Rock and Denise Weaver, a vocational expert.

#### 1. Rock's Testimony

Rock was 51 years old at the time of the hearing, married and living with her husband. (Tr. 29-30) Rock graduated from high school and completed one year at a business college. (Tr. 31) She has also taken several computer classes. (Tr. 31)

On September 21, 2010, her alleged onset date of disability, Rock testified she had been unable to move for about three or four days. Because her pain had increased, her husband took

---

[1] In a letter dated January 24, 2013, Rock amended the onset date from January 1, 2005 to September 21, 2010. (Tr. 158)

her to the emergency room. (Tr. 32) She testified she is unable to work due to her medications, pain level, and inability to sit or stand for prolonged periods of time. (Id.)

Rock's last job was as a self-employed bookkeeper for her husband, for a period of about eight years, ending in March of 2012. (Tr. 33-34) She never worked for more than 15 hours a week. (Tr. 49) She is only able to use a computer for about five minutes because it is hard for her to sit up with her arms elevated due to her neck problems. (Id.) Rock further testified she has a hard time gripping and holding onto things. (Tr. 49-50) Each day she lies down for a period of time as it helps relieve the pressure on her back and neck. (Tr. 50) Rock had to stop working as a self-employed bookkeeper because her medication caused her to have trouble thinking and sitting still for an extended period of time. (Tr. 50-51) Rock testified she finds her situation depressing because she used to be a very active person. (Tr. 51)

Prior to working for her husband, Rock worked at Kaminsky's Home Furnishings for one day because she could not stand up all day. (Tr. 32-33, 35) Rock also worked for Rogers Excavating as a bookkeeper for one year before being laid off. (Tr. 34) She was hired as a receptionist/bookkeeper at a doctor's office but left after one day because they had her lifting and moving file boxes, which she was unable to do. (Tr. 34)

Rock spends most of her time at home. (Tr. 36) She gets up around 11:00 a.m., makes breakfast and takes her medications. (Tr. 35) After breakfast she showers and gets dressed. (Tr. 35, 37) She is able to dress and shower by herself. (Tr. 37) She does not attend family events or go to the movies. She eats out once every three months. (Tr. 37) She has no hobbies and belongs to no clubs, groups or organizations. (Tr. 36, 40) She rarely goes shopping. (Tr. 38) Most of the housework is done by her husband. (Tr. 38-39) Rock has a driver's license and owns a vehicle but has not driven since November of 2012. (Tr. 40)

Rock is currently on several prescription medications for pain, anxiety, fibromyalgia, and her cholesterol level. (Tr. 42-43) With the exception of Vicodin, to which she feels immune, the medications help with her symptoms. (Tr. 42-43) Rock experiences some side effects from the medications. In particular, she states they make her mind feel "blurred." (Tr. 48)

Rock testified she has had pain in her lower back for about 15 years due to compressed discs. Her symptoms intensified two years ago resulting in a sharp, constant pain. She also experiences pain every day in her neck. (Tr. 44-45) Any activity that requires her to hold her arms up makes the pain worse. (Id.) To treat her back pain, Rock saw Dr. Krishnan, a pain management specialist. (Tr. 46) She received injections for her lower back but they did not help with her pain. (Id.) Dr. Krishnan diagnosed Rock with fibromyalgia and arthritis in November of 2011. (Tr. 48) She has no physical problems other than the pain in her neck and lower back. (Tr. 46)

Rock explained she can only sit for a period of 15 minutes and stand for about ten minutes. (Tr. 47) She cannot walk very far and can only climb stairs with the help of a handrail. (Id.) It has been two or three years since she has been able to lift a gallon of milk. (Id.) According to Rock, 40% of her days are bad days. Rock described a "bad day" as taking her medication and just laying around the house. (Tr. 49)

### 2.     Testimony of Vocational Expert.

Vocational expert Denise Weaver classified Rock's past relevant work as bookkeeper, Dictionary of Occupational Titles (DOT) number 210.382-014, sedentary work, with a specific vocational preparation (SVP) of 6, and office worker, i.e., clerk typist, DOT number 203.362-010, sedentary work, with a SVP of 4, or secretary, DOT number 201.362-030, sedentary work, with a SVP of 6. (Tr. 52-53)

The ALJ asked Weaver to assume an individual of the claimant's age, education, and work history who is limited to light work and must avoid concentrated exposure to extreme heat, cold, wetness, vibration, and hazards such as dangerous machinery and unprotected heights. The ALJ further limited the individual to unskilled work secondary to the effects of medication. (Tr. 53) Weaver opined that such an individual could work as a photocopying machine operator, DOT number 207.685-014, light work, SVP of 2, with 400 jobs available in Missouri and 19,880 nationally, mail clerk, DOT number 209.687-026, light work, SVP of 2, with 1,890 jobs available in Missouri and 51,250 nationally, and routing clerk, DOT number 222.687-022, light work, SVP of 2, with 925 jobs available in Missouri and 73,960 nationally. (Tr. 54)

For the second hypothetical, the ALJ asked Weaver to assume the same limitations from the first hypothetical with the additional limitation that the individual must be able to lay down during the day at unscheduled times two or three times in addition to the customary breaks given by industry. (Tr. 54) Weaver testified that such an individual would not be able to sustain work in the national economy because "there is no lying down on the job." (Id.)

For the third hypothetical, the ALJ asked Weaver to assume the same limitations from the first hypothetical with the additional limitation that the individual would be off task approximately 20 percent of the time secondary to the effects of medication. (Tr. 54-55) Weaver opined that such work behavior would not be tolerated for probationary employment. (Tr. 55)

Upon examination by Rock's counsel, Weaver stated that based on her professional knowledge, a probationary employee is generally not allowed more than seven absences in that first year of employment. (Id.) Additionally, the jobs Weaver described as light work would require walking and standing or sitting off and on, for six out of eight hours. (Tr. 56)

**B.**     **Medical Records**

The ALJ summarized Rock's medical records at Tr. 16-19. Relevant medical records are discussed as part of the analysis.

**IV.    Standards**

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see also Brantley v. Colvin, 2013 WL 4007441, at *2 (E.D. Mo. Aug. 2, 2013). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of

impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove that he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national

economy. Id. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Meyerpeter v. Astrue, 902 F.Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Pate–Fires v. Astrue, 564 F.3d 935, 942 (8th Cir.2009). In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir.2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

    (1) The findings of credibility made by the ALJ;
    (2) The education, background, work history, and age of the claimant;
    (3) The medical evidence given by the claimant's treating physicians;
    (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
    (5) The corroboration by third parties of the claimant's physical impairment;
    (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
    (7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

**V.    Discussion**

In her appeal of the Commissioner's decision, Rock alleges the ALJ improperly evaluated the severity of her impairment. (Doc. No. 23 at 13-15) For the following reasons, the Court finds the ALJ's determination is supported by substantial evidence in the record.

To show an impairment is severe, a claimant must show (1) that he has a medically determinable impairment or combination of impairments, and (2) that impairment significantly limits his physical or mental ability to perform basic work activities, without regard to age, education or work experience. See 20 C.F.R. § 404.1520(c), 404.1521(a). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007). See also Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir.2001)). Symptoms "will not be found to affect [a claimant's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 404.1529(b). In addition, only evidence from acceptable medical sources (such as licensed physicians) can establish the existence of a medically determinable impairment. Sloan v. Astrue, 499 F.3d 883, 888 (8th Cir. 2007). It is the claimant's burden to establish that her impairment or combination of impairments is severe. Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir.2000). Although severity is not an onerous requirement, it is also not a toothless standard. Kirby, 500 F.3d at 708.

Rock relies on two letters submitted by her treating physician, Chad Smith, D.O. (Tr. 503, 509) On February 5, 2013, Dr. Smith stated that Rock's symptoms, based on back pain, neck pain, and medication side effects, severely limited her ability to maintain gainful employment (Tr. 503) He also stated she would need to lie down several times a day and required frequent position changes. (Tr. 503) On March 29, 2013, Dr. Smith submitted another letter stating that Rock's work limitations have been persistent since September 30, 2010 and adding that Rock would need to miss more than two work days a month. (Tr. 28, 509)

A treating physician's opinion is generally entitled to substantial weight but does not automatically control. Brown v. Astrue, 611 F.3d 941, 951-52 (8th Cir. 2010) (quoting Heino v. Astrue, 578 F.3d 873, 880 (8th Cir.2009) (internal quotations and citation omitted). "An ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." Id. See also Papesh v. Colvin, 786 F.3d 1126, 1132 (8th Cir.2015). In addition, treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005); House v. Astrue, 500 F.3d 741, 745 (8th Cir. 2007) (A physician's opinion that a claimant is "disabled" or "unable to work" does not carry "any special significance," because it invades the province of the Commissioner to make the ultimate determination of disability). Regardless of the weight the ALJ decides to afford the opinion of a medical source, the ALJ must "always give good reasons" for the weight assigned to the opinion. Singh v. Apfel, 222 F.3d 448, 452 (8th Cir.2000); Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir.2000)).

In reaching her conclusion that Rock's degenerative disc disease did not significantly limit her ability to perform basic work activities, the ALJ gave Dr. Smith's assessment of Rock's ability to work little weight, finding it unsupported by substantial evidence. (Tr. 19) Upon review of the record, the Court concludes the ALJ properly evaluated Dr. Smith's opinions, listing "good reasons" for giving them little weight. Prosch, 201 F.3d at 1013.

First, Dr. Smith's statements are dated nearly three years after the expiration of the date last insured. (Tr. 18) Although he indicated that Rock had imaging showing degenerative changes of the lumbar region, the record indicates this imaging was taken in October 2011, over a year after the expiration of the date last insured. (Id.) Second, the majority of Rock's treatment

occurred after the expiration of the date last insured. (Tr. 18, 265-363, 364-65, 366-382, 383-85, 386-391, 392-484, 485-502, 504-508) Third, there is little objective evidence in the record to support Dr. Smith's contention that Rock's condition dated back to September 2010. (Tr. 18) Only one medical record came from the relevant time period - September 21, 2010 to September 30, 2010 - and only minimal physical findings prior to the expiration of the date last insured. (Tr. 17) On May 5, 2008, Rock saw Dr. Smith, for neck and low back pain. (Tr. 303-04) Dr. Smith observed a limited range of motion in her back, but normal range of motion in her neck, and normal motor and sensory function in her lower extremities. (Tr. 304) On September 21, 2010, Rock saw Dr. Smith for lower back pain. (Tr. 283) Dr. Smith observed a moderately limited range of motion in her back, but her lower exterior motor and sensory exam was normal. (Tr. 283) The absence of an objective medical basis to support the degree of subjective complaints is an important factor in evaluating the credibility of the claimant's testimony and complaints. Russell v. Sullivan, 950 F.2d 542, 545 (8th Cir. 1991). See also Forte v. Barnhart, 377 F.3d 892, 895 (8th Cir.2004) (lack of objective medical evidence is a factor an ALJ may consider). Finally, as of the date last insured, Rock did not regularly complain of side effects from her medications, which was contrary to Dr. Smith's contention that Rock suffered additional sedative effects of her medications (Tr. 18-19)

The ALJ also noted that while Rock periodically requested pain medications and was prescribed a combination of medication including Flexeril and hydrocodone,[2] she did not

---

[2] Rock argues it would be unlikely for a treating source to continually prescribe a narcotic for pain resulting from only a slight abnormality. (Doc. No. 23 at 15) Here, however, the objective medical evidence demonstrates Rock's treatment remained stable during the relevant period. In contrast, Rock's situation is distinguishable from the claimant in Beckley v. Apfel, 152 F.3d 1056, 1060 (8th Cir. 1998). In that case, the claimant had many visits to doctors, took numerous prescription medications for pain, availed herself of many treatment modalities for chronic pain, including a TENS unit, physical therapy, steroid injections, and nerve blocks, and underwent several diagnostic tests.

actually complain of back pain to Dr. Smith at every medical appointment. (Tr. 17) Rock saw Dr. Smith six times between March 2008 and August 2010 (Tr. 17, 286, 289, 292, 299, 303); however, she only reported back pain once, in March 2008, after painting. (Tr. 303) Moreover, there was no evidence that Rock required aggressive treatment like a TENS unit or surgery, nor did she have frequent visits to the emergency room or urgent care for pain. (Tr. 17) Based on this evidence, the ALJ certainly could conclude that Rock's treatment history contradict her claims of disabling pain. See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001); Thomas v. Sullivan, 928 F.2d 255, 259 (8th Cir.1991). See also Rautio v. Bowen, 862 F.2d 176, 179 (failure to seek aggressive treatment not suggestive of disabling back pain).

The ALJ considered the fact that Rock continued to work 15 hours per week as a bookkeeper for her husband's business after her alleged onset date of disability. (Tr. 18) The ability to maintain employment with an impairment, together with the absence of evidence that the condition has significantly deteriorated, tends to prove the impairment was not disabling. See Goff, 421 F.3d at 792 (the fact claimant worked with impairments for over three years after her strokes without significant deterioration demonstrated her impairments were not disabling in the present.). See also Orrick v. Sullivan, 966 F.2d 368, 370 (8th Cir. 1992).

Further, the ALJ found Rock's daily activities inconsistent with her allegations regarding the disabling nature of her back pain. Rock reported she cared for her dog, took care of her personal hygiene, and performed household chores. (Tr. 18, 37, 39-40, 223-25) She stated she was able to cook, watch movies, occasionally shop, and use the computer. She does some stretches to increase her strength and flexibility. (Tr. 18, 223, 226) She flew to North Carolina in June 2011 to visit her children and told Dr. Smith she went on vacations and attended family gatherings in August and September 2011. (Tr. 47, 266) The fact that Rock was capable of

sitting, standing and walking sufficiently to perform these daily activities led the ALJ to conclude her impairment did not significantly limit her ability to perform basic work-related activities. (Tr. 18) See e.g., Ponder v. Colvin, 770 F.3d 1190, 1195-96 (8th Cir. 2014) (claimant's assertion of total disability undermined by her admissions that she performs light housework, washes dishes, cooks for her family, does laundry, can handle money and pays bills, shops for groceries and clothing, watches television, leaves her house alone, and visits her family). See also Roberson v. Astrue, 481 F.3d 1020, 1025 (8th Cir.2007); Wagner v. Astrue, 499 F.3d 842, 852 (8th Cir.2007).

In addition, Rock made a number of inconsistent statements that weighed against her credibility. For example, she testified she was unable to walk long distances (Tr. 47), but when questioned more thoroughly indicated that she walks daily and "can walk pretty good [sic]." (Tr. 226) The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts. Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001); Benskin v. Bowen, 830 F.2d 878 (8th Cir. 1987). Here, the inconsistencies in Rock's testimony support the ALJ's credibility determination.

## VI. Conclusion

For these reasons, the Court finds the ALJ's decision is supported by substantial evidence contained in the record as a whole, and, therefore, the Commissioner's decision should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. A separate judgment will accompany this Order.

Dated this 21st day of September, 2015.

                                                **JOHN A. ROSS**
                                                **UNITED STATES DISTRICT JUDGE**